(Nos. 63713, 63787 cons.—

APRIL RIVARD *et al.*, Appellees, v. CHICAGO FIRE FIGHTERS UNION, LOCAL NO. 2 *et al.*, Appellants.—BONNELL CARTER, Adm'r of the Estates of Martha Carter *et al.* v. CHICAGO FIRE FIGHTERS UNION, LOCAL NO. 2 *et al.* (International Association of Fire Fighters, AFL-CIO, Appellant).

*Opinion filed March 23, 1988.—Rehearing denied May 31, 1988.*

CUNNINGHAM, J., took no part.

Gilbert Feldman, Esq., of Cornfield and Feldman, of Chicago, for appellant Chicago Fire Fighters Union, Local No. 2 *et al.*

Stephen B. Rubin, Michael S. Wolly, and Joel A. D'Alba, of Chicago (Mulholland & Hickey, of Washington, D.C., and Asher, Pavalon, Gittler & Greenfield, Ltd., of

Chicago, of counsel), for appellant International Association of Fire Fighters, AFL-CIO.

Robert H. Williams, of Jeffrey M. Goldberg & Associates, Ltd., and Katherine A. Williams, of Katz, Randall & Weinberg, all of Chicago, and Thomas Forgue, of Washington, D.C., for appellees April Rivard et al.

Gordon & Gordon, Ltd., of Chicago (Robert E. Gordon, of counsel), for appellees Bonnell Carter et al.

JUSTICE CLARK delivered the opinion of the court:

This case poses the issue of whether a statute allowing voluntary, unincorporated associations to sue and to be sued in their own names should be retroactively applied to a suit against such an association where the cause of action arose before the statute's effective date. We answer this question in the negative.

The plaintiffs in the two actions consolidated below sought damages from the defendant, a fire fighters union, for death and injuries suffered in fires which occurred during a strike called by the union in 1980. The plaintiffs are: April Rivard; Robert Oliver, administrator of the estate of Latrice Louis Rivard, deceased; Bonnell Carter, administrator of the estates of Martha Carter, Caenezell Carter, Harvey Carter, and Henry Carter, deceased; and Harvey and Martha Teague, administrators of the estate of Harvey Teague II, deceased. The defendants are the Chicago Fire Fighters Union, Local No. 2, and the International Association of Fire Fighters, AFL-CIO, and certain of its officers in a representative capacity. The circuit court granted the defendant's motion to dismiss on the grounds that, under the common law, a voluntary unincorporated association could not be sued in its own name in an action at law. (See *American Federation of Technical Engineers, Local 144 v. La Jeunesse* (1976), 63 Ill. 2d 263.) The plaintiffs appealed to the ap-

pellate court. While the appeal was pending, the General Assembly amended the Code of Civil Procedure to allow voluntary unincorporated associations to sue and be sued in their own names (Ill. Rev. Stat. 1985, ch. 110, par. 2—209.1). The appellate court, holding that section 2—209.1 should be applied retroactively, then reversed. (145 Ill. App. 3d 207.) This decision directly conflicted with a previous decision of the appellate court. (See *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260.) We granted the defendant's petition for leave to appeal (107 Ill. 2d R. 315 (a)).

The remainder of the facts pertinent to this appeal are contained in the legislative history of section 2—209.1.

The bill which enacted section 2—209.1, Public Act 83—901, was originally passed by both houses of the General Assembly with no dissenting votes. It was then presented to the Governor.

On September 19, 1983, the Governor amendatorily vetoed the bill. (See Ill. Const. 1970, art. IV, §9(e).) His amendatory veto recommended that section 2—209.1 should be prospective rather than retroactive, that its prospective nature should be clearly stated in that statute itself, and that it should "apply only to causes of action accruing after the effective date of this Amendatory Act of 1983," or January 1, 1984.

Shortly thereafter, both houses of the General Assembly voted to override the Governor's amendatory veto. Senator Bloom, the author, chief sponsor, and a member of the judiciary committee that reported the bill, stated that the bill:

> "would allow voluntary associations to sue and be sued. By his amendatory veto, [the Governor] made it prospective in application, and what it does, it harms a large class of persons by excluding worthy suits, and *** arbitrarily killing some pending cases; and it creates another undesirable precedent in that 581 is clearly procedural in

nature *** in fact it doesn't create or delete any legal rights but does create procedures making that preexisting right to litigate available to all members of society including these associations." (83d Ill. Gen. Assem., Senate Proceedings, October 20, 1983, at 35-38.)

Senator Bloom went on to note that:

"Similar laws in other states have regularly been interpreted to be retrospective, and that is the overwhelming majority rule. By his amendatory veto making it prospective, it excludes large classes of worthy people and absolutely *** throws the crimp into several pending cases ***. And that affects existing litigants, and that is why, after consulting with various legal experts, I'd go for the total override to go with the bill as it was recommended by the Illinois Supreme Court." (83d Ill. Gen. Assem., Senate Proceedings, October 20, 1983, at 35-38.)

(It should be noted parenthetically that this was not an accurate statement of the official position of the court. While the court has recommended legislative action to abrogate the common law rule in every year from 1976 until the statute was passed (see 1978 Report of the Chief Justice to the General Assembly (Ill. Const. 1970, art. VI, §17), reprinted in Administrative Office of the Illinois Courts, 1978 Annual Report to the Supreme Court of Illinois 19; 1979 Report of the Chief Justice to the General Assembly, reprinted in Administrative Office of the Illinois Courts, 1979 Annual Report to the Supreme Court of Illinois 17; 1980 Report of the Chief Justice to the General Assembly, reprinted in Administrative Office of the Illinois Courts, 1980 Annual Report to the Supreme Court of Illinois 21; 1981 Report of the Chief Justice to the General Assembly, reprinted in Administrative Office of the Illinois Courts, 1981 Annual Report to the Supreme Court of Illinois 21), the court has taken no official position on whether the change should be prospective or retroactive.)

In the House, the House sponsor of the bill, Representative McCracken, stated:

> "I move to override the Governor's amendatory veto of 581 for the reason that the Governor has amended this procedural change in the law to apply prospectively only, even to causes of action which have already arisen but not yet been filed. That is in contravention of the historical practice of making procedural changes in the law to apply both retroactively and prospectively. This does not create any new rights under the law. It merely facilitates the bringing of a suit and the defense of a suit relative to unincorporated associations. Essentially, it places them in the same posture as other entities under the law." 83d Ill. Gen. Assem., House Proceedings, November 1, 1983, at 26-29.

On this appeal the appellant union maintains that the statute should not be retroactively applied because: (1) the legislature did not intend the statute to have retroactive effect, (2) retroactivity, even if intended, should not be granted because it would lead to unreasonable and unjust results, and (3) retroactive application to this case would violate the constitutional separation of powers by abrogating a final judgment of the circuit court.

The principles governing our interpretation of statutes with respect to their prospective or retroactive operation have been stated a number of times. Because this case poses a difficult question with respect to these principles, we take this opportunity to review their origin and rationale.

As a general matter it is clear that prospective application of statutes is to be preferred to retroactive, or retrospective, application. This preference has existed from time out of mind. "The doctrine that legislation must be prospective in character is traceable to Coke and Bracton, who recognized it as a rule of construction founded on doctrines of natural law, and it was incorporated into American jurisprudence by the learned jurists

Kent and Story." (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.) The doctrine has sometimes been treated as a constitutional restraint on legislation, and sometimes as a rule of statutory construction. 4 Ill. 2d at 346; compare 2 A. Sutherland, Statutes and Statutory Construction §41.03, at 343-45 (4th ed. 1986) (prospectivity as a constitutional limitation) with 2 A. Sutherland, Statutes and Statutory Construction §41.04, at 348-50 (4th ed. 1986) (prospectivity as a rule of statutory construction).

The preference for prospectivity is founded upon:

> "[the] fundamental principle of jurisprudence that retroactive application of new laws is usually unfair. There is a general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged ***. [Jeremy] Bentham stated the case against retroactivity when he likened it to 'dog law.' He was referring to age-old method of training dogs by waiting until they do what they are to be forbidden to do and then kicking them." 1A A. Sutherland, Statutory Construction §41.02, at 340-41 (4th ed. 1986).

It has thus been our general rule of construction that an amendatory act will be construed as prospective. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390; *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.) The presumption of prospectivity is rebuttable, but only by the act itself. Either by express language or necessary implication, the act must clearly indicate that the legislature intended a retroactive application. *People v. Kellick* (1984), 102 Ill. 2d 162, 180; *United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142.

We agree with the appellants that the presumption of prospectivity cannot ordinarily be rebutted merely by contrary statements of individual legislators during legislative debates. Since no statute will violate the Constitution merely because it operates prospectively, prospectivity is to be preferred. Relying on statements in the

legislative history might create constitutional defects in legislation that might not otherwise exist. Nor can we agree with the appellees that the cases cited above are outdated.

It is true, however, that the presumption of prospectivity does not apply to changes in procedure or remedies. When a change in the law changes procedure alone, it will be construed as retroactive so long as that is what the legislature intended. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390; *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.) If the change is procedural, legislative intent may be divined through any of the ordinary devices of statutory interpretation. These include: (1) the evil to be remedied and the object to be obtained, (2) the reason and necessity for the statute, and (3) the history of the legislation. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527.) The record of the legislative debates, and more particularly statements by the sponsors of the legislation, form part of the legislative history. *Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 136.

Thus the initial question here is whether section 2—209.1 is procedural. We have noted before that the line between "substance" and "procedure" may often be unclear. (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 348 ("no simple formula can be evolved as to when an amendment relates to a procedural, or to a substantive right").) In general, procedural law is " '[t]hat which prescribes the method of enforcing rights or obtaining redress for their invasion; machinery for carrying on a suit.' " (*People v. Ruiz* (1985), 107 Ill. 2d 19, 22, quoting Black's Law Dictionary 1367 (4th ed. 1951).) Substantive law, in contrast, establishes the rights whose invasion may be redressed through a particular procedure. More specifically, procedure embraces "pleading, evidence and practice. Practice means those legal rules which direct

the course of proceedings to bring parties into court and the course of the court after they are brought in." *Ogdon v. Gianakos* (1953), 415 Ill. 591, 596.

While the application of these tests is not easy, we believe that the law governing the suability of unincorporated associations is fairly characterized as substantive.

Whatever the original intention of the common law rule, it is clear that it had the practical effect of extinguishing causes of action by or against unincorporated associations as collective entities. Stating the matter in another way, injured parties under the common law rule enjoyed no rights *vis-a-vis* unincorporated associations. They only enjoyed rights against the members of such associations. Thus the common law rule, and its statutory alteration, are substantive.

The distinction between this statute and a truly procedural statute is underlined by a consideration of the facts of *Ogdon v. Gianakos* (1953), 415 Ill. 591. In *Ogdon* the statute under consideration allowed persons injured in Illinois to obtain jurisdiction over nonresident motorists by serving process upon the Secretary of State. The court held that "[t]he statute in question is certainly not part of the law which creates, defines, or regulates rights. \*\*\* *The issue or service of process is not what makes one a party to a suit*. It is merely a step in obtaining jurisdiction of his person after he is a party to a suit." (Emphasis added.) 415 Ill. at 596.

Thus, a rule which "makes one a party to a suit" must be considered substantive, whereas a rule which merely facilitates suit against a party is procedural. Section 2—209.1 does make certain entities, unincorporated associations, parties to suits. It is not merely a procedural step needed for the acquisition of jurisdiction over them.

Finally, we note that our appellate court has previously held that the common law rule was substantive,

specifically declining to abrogate it on that ground. (*Montgomery Ward & Co. v. Franklin Union, Local No. 4* (1944), 323 Ill. App. 590, 593.) Moreover, our court as recently as *American Federation of Technical Engineers, Local 144 v. La Jeunesse* (1976), 63 Ill. 2d 263, 266, has refused to change the common law rule without legislative action, thus implicitly acknowledging its substantive nature.

Since the statute is substantive, the presumption of prospectivity cannot be overcome merely by the statements of the legislation's sponsors. Since the clear language of the act and its effective date point to a prospective application, it will be so applied.

Since we resolve the case upon this ground, it is not necessary to determine whether retroactive application in this instance would unfairly defeat *bona fide* expectations or whether it would unconstitutionally abrogate a final judgment of the circuit court. For the reasons stated, the judgment of the appellate court is reversed and that of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.