LOUISE WANLESS, Plaintiff-Appellee, v. PATRICIA BURKE *et al.*, Defendants-Appellants (Navesink Resources, Inc., *et al.*, Defendants).

Third District   Nos. 3—93—0185, 3—93—0186 cons.

Opinion filed November 19, 1993.—Rehearing denied January 13, 1994.

Hinshaw & Culbertson, of Peoria (W. Mark Rasmussen, of counsel), for appellant Howard Knapp.

Julian E. Cannell, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (James W. Springer, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Louise Wanless, filed a claim for rescission of the sale of certain securities allegedly sold to her by the defendants, Patricia Burke and Howard Knapp. The defendants appeal from the trial court's rulings on the applicable statute of limitations and the availability of rescission as a remedy. Defendant Burke further appeals from the jury verdict against her.

We find that the amendment to the statute of limitations at issue here must be applied retroactively but that the amendment eliminating the plaintiff's remedy must be applied prospectively only. In addition, we find that the jury's verdict must be set aside because there is no evidence that the officer of the corporation was involved in or aided the sale of the securities in question. We therefore hold that the plaintiff had a right to bring this action under

the Illinois Securities Law of 1953 (815 ILCS 5/1 *et seq.* (West 1992)) (Securities Laws), and that the suit was timely but the jury's verdict against defendant Burke was against the manifest weight of the evidence.

On December 31, 1984, the plaintiff invested $25,000 in two limited partnership units in the Austin Silver Tailings Recovery Program 1984 (Austin). Austin was a limited partnership in the business of processing silver and gold slag (tailings) in such a manner as to obtain additional silver and gold which was not recoverable under earlier methods. Austin's general partners were Navesink Resources, Inc., and Jerome Burke (the husband of defendant Patricia Burke).

Frank Wanless, the plaintiff's husband, arranged the plaintiff's purchase of the limited partnership units in Austin through defendant Knapp and the brokerage firm of Underhill Associates, Inc. (Underhill). Defendant Burke owned 50% of Underhill and served the corporation as a director and as limited financial principal.

Following the purchase, Frank Wanless kept in touch with Walter Knapp and Jerome Burke regarding the progress of the investment. Knapp and Burke made repeated representations that Austin had real estate holdings and was actively pursuing the acquisition of more real estate holdings. Similar representations were contained in the prospectus sent to the plaintiff. It was on these real estate holdings that Austin allegedly intended to extract the gold and silver. Frank Wanless testified that the ownership of real estate was important to him because he believed that the risk of loss was diminished by the ownership of the property. If the silver and gold recovery program failed, at least Austin would be able to sell the land.

In a letter dated February 21, 1989, Jerome Burke first acknowledged to Frank Wanless that Austin did not hold title to any real estate and would not in the future seek to acquire title to any real estate. The plaintiff filed an action for rescission of the sale on November 14, 1989.

Both defendants filed motions to dismiss the rescission action on the grounds that the statute of limitations had passed. These motions were denied. Later in the litigation, the General Assembly passed an amendment to the Securities Laws which removed mineral investment contracts from the definition of securities, the effect of which was to make rescission unavailable to those investors involved in mineral investment contracts. Both defendants filed motions for summary judgment based upon this change. Both motions

were denied. The issues were tried before a jury and a verdict in favor of the plaintiff and against both defendants was rendered.

The defendants argue that the trial court erred in giving retroactive effect to an amendment to the statute of limitations provision of the Securities Laws and in giving only prospective effect to the deletion of "mineral investment contracts" from the definition of securities.

With regard to each of these issues we are asked to determine whether a statutory amendment should be given retroactive effect. The Illinois Supreme Court set out the test for making this determination in *Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 522 N.E.2d 1195.

In *Rivard* the plaintiffs' lawsuit had been dismissed based on the common law principle that voluntary unincorporated associations could not sue or be sued in their own names. While the case was on appeal from the judgment of dismissal, the General Assembly amended the Code of Civil Procedure to allow suits by or against such associations in their own names. The appellate court held that this amendment should be applied retroactively and reversed the circuit court's judgment.

On appeal, the supreme court found that the general rule is that prospective application of statutes is preferred and presumed. Amendments that are substantive will be applied prospectively. However, the presumption of prospectivity does not apply to changes in procedure or remedies. Procedural changes may be applied retroactively, as long as that is what the legislature intended. Applying the substantive-procedural test, the court ruled that the amendment in question was substantive because it made voluntary unincorporated associations liable to suit rather than outlining the process for bringing the suit. Therefore, the amendment should have been applied prospectively only.

In the case at bar, we are faced with determining the prospectivity/retroactivity of two amendments. The first amendment in question lengthened the statute of limitations for civil suits arising out of violations of the Securities Laws.

Prior to its amendment, section 13(D) of the Securities Laws provided that all claims must be filed within three years of the date of the sale of the securities involved. (Ill. Rev. Stat. 1983, ch. 121½, par. 137.13(D).) This was the provision in effect when the plaintiff purchased the limited partnership units in Austin in December 1984. Subsequent to the sale but prior to the expiration of the statute of limitations on the plaintiff's claim, this section was

amended to allow for suits to be filed within two years of the date the plaintiff knew or should have known of the violation but in no event more than five years from the date of the sale. See 815 ILCS 5/13(D) (West 1992).

■ Amendments changing statutes of limitations are considered procedural. (*Moshe v. Anchor Organization for Health Maintenance* (1990), 199 Ill. App. 3d 585, 557 N.E.2d 451.) Thus, such amendments may be given retroactive effect. (*Rivard*, 122 Ill. 2d 303, 522 N.E.2d 1195.) Further, when a limitations period has not expired prior to an amendment, the amendatory act controls all actions and remedies not previously barred. *Sargent & Lundy v. Sweet* (1990), 207 Ill. App. 3d 888, 566 N.E.2d 482.

We hold that the plaintiff's claim was timely if filed within two years from the date she knew or should have known of the violation but not more than five years from the date of the sale. The sale occurred in December 1984. The plaintiff first learned of the violation in February 1989. The present suit, filed in November 1989, was therefore timely.

The defendants argue that the legislature intended the statute of limitations provision to apply only prospectively. In support of their argument, they cite a section of legislative debate in which the sponsor of the bill stated that the limitations period for claims arising on that date would not be changed. However, the sponsor went on to state that it was not intended to affect those cases currently "in litigation." The present case was not "in litigation" at the time of the amendment, so applying the amendment to this case is not contrary to the legislative intent. Further, statements made by legislators when debating a bill are not binding on the court. See *Rivard*, 122 Ill. 2d 303, 522 N.E.2d 1195.

■ The second amendment we must address concerns the remedy of rescission. Prior to amendment, mineral investment contracts were included in the definition of "security" under the Securities Laws and thus a violation of the Securities Laws with regard to mineral investment contracts was subject to the rescission remedy provided in the laws. (Ill. Rev. Stat. 1989, ch. 121½, par. 137.2—1.) This was the provision in effect at the time plaintiff filed suit. Subsequently, the definition of "security" was amended by deleting mineral investment contracts. See 815 ILCS 5/2.1 (West 1992).

Applying the substantive-procedural test, we find that this amendment is substantive. It deprives a class of persons of their right to seek rescission and insulates a class of defendants from this remedy. Although this is the opposite case from the one in-

volved in *Rivard* (taking away a remedy rather than providing one), *Rivard* nonetheless stands for the proposition that such amendments are substantive. Therefore, we hold that this amendment was properly applied prospectively only and the trial court did not err in denying the motions for summary judgment.

Defendant Burke argues that the jury's verdict against her was against the manifest weight of the evidence.

Section 13(A) of the Securities Laws provides that the following groups of persons may be held jointly and severally liable to the purchaser of securities sold in violation of the law: (1) the issuer, controlling person, underwriter or dealer on behalf of whom the sale was made; (2) each underwriter, dealer or salesperson who participated or aided in any way in the sale; and (3) officers and directors who participated or aided in the sale if the issuer, controlling person, underwriter or dealer is a corporation. 815 ILCS 5/13(A) (West 1992).

The plaintiff argues that defendant Burke can be held personally liable because of her position as 50% owner of Underhill Associates, Inc. The plaintiff contends that Underhill was the issuer, underwriter, or dealer involved in the sale and that defendant Burke was the issuer, underwriter, dealer or controlling person as defined by the Securities Laws.

We note that the "issuer" is a person or corporation who issues or proposes to issue a security. (815 ILCS 5/2.2 (West 1992).) In this case, the issuer is Austin. Austin is the entity offering to sell limited partnership units. There is no evidence that defendant Burke had anything to do with Austin other than being married to one of the general partners. So defendant Burke cannot be liable as an issuer.

A "controlling person" is someone who owns a beneficial interest in the issuer and is able, through that interest, to control the actions of the issuer. (815 ILCS 5/2.4 (West 1992).) The only entity in which defendant Burke had any interest was Underhill. Since Underhill was not the issuer, defendant Burke cannot be the "controlling person."

Although counsel for defendant Burke opined during oral argument that Underhill acted as the underwriter in this transaction, the record is unclear as to whether Underhill was the underwriter or the dealer. An "underwriter" is a person or corporation who offers or sells a security for an issuer. (815 ILCS 5/2.6 (West 1992).) A "dealer" is a person or corporation who is in the business of of-

fering, selling, buying and selling, or otherwise dealing in securities issued by another person. 815 ILCS 5/2.7 (West 1992).

In either event, Underhill would be liable to the plaintiff because it would come within the first class of persons held liable under the statute. Because Underhill is a corporation, we must look to the third class of persons outlined in the statute to determine whether defendant Burke can be held personally liable. The statute provides that persons in the third class may be liable only if they participated or aided in the sale.

■ After carefully reviewing the record, we find no evidence that defendant Burke was in any way involved in the sale. In testifying about the events which led up to and occurred subsequent to the sale, Frank Wanless did not mention defendant Burke. In fact, neither he nor his wife could point to any specific evidence of defendant Burke's involvement. Frank Wanless testified that defendant Burke must have "authorized" or "organized" the sale, yet he could not say how he "knew" this. He did not meet her or deal with her. Moreover, he could not say that she provided him with any information regarding Austin. Since the record is totally devoid of any evidence that defendant Burke participated or aided in the sale of the Austin limited partnership units, we hold that the jury's verdict against her was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed with regard to the denial of the defendants' motions to dismiss and motions for summary judgment. The judgment is reversed with regard to the personal liability of defendant Burke.

Affirmed in part; reversed in part.

LYTTON and SLATER, JJ., concur.