NOTICE

Decision filed 03/07/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0383

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

JOHN DOE A.,

    Plaintiff-Appellant,

v.

DIOCESE OF DALLAS, DIOCESE
OF BELLEVILLE, ARCHDIOCESE
OF ST. LOUIS, and FATHER
KENNETH ROBERTS,

    Defendants-Appellees.

) Appeal from the
) Circuit Court of
) St. Clair County.
)
) No. 03-L-713
)
)
)
)
) Honorable
) Lloyd A. Cueto,
) Judge, presiding.

_____

JUSTICE CHAPMAN delivered the opinion of the court:

John Doe A. appeals from the trial court's February 17, 2006, order dismissing his complaint with prejudice as being barred under the 1994 childhood sexual abuse statute of limitations (735 ILCS 5/13-202.2 (West 1994)) and concluding that a more recent limitations statute for survivors of childhood sexual abuse (735 ILCS 5/13-202.2 (West Supp. 2003)) was inapplicable because the earlier applicable limitations period had already expired before the enactment of the later statute and thus could not be revived by this later legislative enactment. We reverse and remand.

The plaintiff in this case alleges that he was sexually molested by Father Kenneth Roberts one time in 1984 when Father Roberts was a guest speaker at the plaintiff's Catholic grade school in Belleville, Illinois. As we will detail in this opinion, allegations of sexual misconduct had been lodged against Father Roberts prior to this Belleville engagement.

The plaintiff was born on May 5, 1970, into a devout Catholic family. By 1984, the plaintiff was considering entering the priesthood. Father Roberts came to speak at the

1

plaintiff's school–St. Mary's Catholic Elementary School. Because of his background as a Catholic author and international speaker, Father Roberts has a prominent reputation. During the week that Father Roberts was in residence for purposes of his speaking engagement in Belleville, Illinois, the plaintiff sought permission to leave class in order to counsel with Father Roberts about his inclinations toward the priesthood. It was during this session in the parish rectory that the alleged abuse occurred. The plaintiff did not return for an additional discussion with Father Roberts, and in fact, he never saw him again.

The plaintiff went on through high school, and while he continued to explore a possibility of entering the priesthood by participating in an out-of-state religious retreat, he ultimately elected to go down a different occupational path outside of the Catholic Church. Because of his religious beliefs and teachings relative to the position held by priests within the Catholic Church, the plaintiff contends that he simply did not understand that what took place with Father Roberts in 1984 was inappropriate or illegal. Approximately four years later, the plaintiff began thinking that Father Roberts' words and actions had been inappropriate. In December 1998, in a moment of great mental anguish, the plaintiff went to the emergency room at St. Louis University Hospital, where he told an emergency room physician what had happened between him and Father Roberts back in 1984. This physician was the first person to hear the plaintiff's allegations. Thereafter, the plaintiff received treatment from two physicians upon his release from St. Louis University Hospital. During the course of that treatment, the plaintiff finally came to understand that he had been injured by Father Roberts. The plaintiff filed this lawsuit on November 12, 2003. He filed his claim against the Diocese of Dallas, the Diocese of Belleville, the Archdiocese of St. Louis, and Father Kenneth Roberts. The lawsuit was in three fraud-based counts, with allegations that the diocese defendants concealed knowledge that Father Roberts had sexually abused children before the encounter with the plaintiff, that there was no way for the plaintiff to

2

have discovered this information, and that had he known, the plaintiff would not likely have had his 1984 meeting with Father Roberts.

In response to the suit, Father Roberts filed a motion to dismiss on the basis that the suit was barred by the statute of limitations. The Diocese of Dallas and the Archdiocese of St. Louis filed motions to dismiss alleging the court's lack of personal jurisdiction. The Diocese of Belleville filed no motion.

The trial court held a hearing on these motions to dismiss on February 1, 2006. No argument was made about the statute of limitations relative to the diocese defendants, although the plaintiff did argue against the statute of limitations as it pertained to Father Roberts. The trial court ruled on the motions on February 17, 2006, concluding that the statute of limitations barred all of the plaintiff's claims. The plaintiff filed a motion to reconsider on the basis that the diocese defendants had never raised the limitations defense. The trial court denied the motion on July 6, 2006. From the rulings on those motions, the plaintiff appeals to this court.

On appeal from a trial court's involuntary dismissal of a complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2004)), we must determine " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110, 708 N.E.2d 1140, 1144 (1999) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993)). In other words, our review is *de novo*. *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 542, 680 N.E.2d 784, 789 (1997).

Initially, we must determine if the trial court erred in *sua sponte* dismissing the case with regard to all the defendants on the basis of the statute of limitations. No one questions the factual statement that only defendant Father Roberts filed a motion to dismiss on the

3

limitations defense. Yet, the trial court dismissed the entire case–not just the case as it related to Father Roberts. The plaintiff argues that this is improper unless all the parties have raised and argued the issue. However, that is not quite in keeping with the case law. Generally speaking, a trial court "may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) (citing *Rosser v. Chrysler Corp.*, 864 F.2d 1299 (7th Cir. 1988); *Silverton v. Department of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981); and *Loman Development Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987)). More specifically, Illinois courts have rather routinely held that the dismissal of an entire complaint on limitations grounds is allowable where at least one defendant has filed a motion to dismiss on that basis. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 453-55, 845 N.E.2d 792, 800-02 (2006) (allowing the dismissal of an entire complaint even with regard to defendants who had not yet been served with process); *Merritt v. Randall Painting Co.*, 314 Ill. App. 3d 556, 558-59, 732 N.E.2d 116, 117-18 (2000) (affirming a dismissal with regard to four unserved defendants).

In addition to the case law supporting the trial court's right to *sua sponte* dismiss the plaintiff's complaint on limitations grounds, there is the practical reason for allowing this. There would simply be no reason to allow a part of a lawsuit to continue just because a defendant had not yet filed a proper motion to dismiss or other dispositive motion alleging grounds identical to those already deemed appropriate to support a dismissal.

The plaintiff does argue that the basis for the limitations defense would be vastly different for the diocese defendants than it would be for Father Roberts. However, the plaintiff articulates no facts supporting this premise.

Accordingly, without commenting upon the ultimate issue, we find that the trial court

4

did not err in *sua sponte* dismissing the complaint with regard to the defendants who had not yet raised that particular defense by way of a motion.

We next turn to the statute of limitations applicable in this case. The changes resulting in the current limitations structure began in 1991. Before that time, abuse actions seeking damages were treated as any other personal injury case. *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997, 998, 857 N.E.2d 737, 738 (2006) (citing *Benton v. Vonnahmen*, 288 Ill. App. 3d 199, 201-02, 679 N.E.2d 1270, 1272-73 (1997) (citing Ill. Rev. Stat. 1989, ch. 110, par. 13-202 (now see 735 ILCS 5/13-202 (West 2006)); and Ill. Rev. Stat. 1989, ch. 110, par. 13-211 (now see 735 ILCS 5/13-211 (West 2006)))). The initial limitations statute specific to claims of childhood sexual abuse–section 13-202.2 of the Code–was enacted by our legislature in September 1990; that amendment took effect on January 1, 1991, and included a statute of repose which would not allow a plaintiff to file a claim more than 12 years from the date that the plaintiff turned 18 years of age. Pub. Act 86-1346, §1, eff. January 1, 1991; Ill. Rev. Stat., 1990 Supp., ch. 110, par. 13-202.2; 735 ILCS 5/13-202.2 (West 1992). "In effect, then, the statute of repose barred claims for childhood sexual abuse by anyone 30 years or older." *Galloway*, 367 Ill. App. 3d at 999, 857 N.E.2d at 738 (citing *M.E.H. v. L.H.*, 177 Ill. 2d 207, 214, 685 N.E.2d 335, 339 (1997)).

In 1993, by an amendment, the legislature eliminated the statute of repose. Pub. Act 88-127, §5, eff. January 1, 1994; see 735 ILCS 5/13-202.2 (West Supp. 1993).

In 2003, the legislature further amended the relevant provision of the limitations statute; the amendment extended the statute of limitations and added language clarifying what it means for a plaintiff to discover his or her injury for purposes of triggering the statute of limitations. Pub. Act 93-356, §15, eff. July 24, 2003; 735 ILCS 5/13-202.2 (West Supp. 2003). Specifically, the statute of limitations is now 10 years or 5 years from "the date the person abused discovers or through the use of reasonable diligence should discover both

5

(i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse." 735 ILCS 5/13-202.2(b) (West 2006). Subsection (e) of this statute addresses the applicability of the amendment and, with regard to the 2003 amendment, states, "The changes made by this amendatory Act of the 93rd General Assembly apply to actions pending on the effective date of this amendatory Act of the 93rd General Assembly as well as actions commenced *on* or *after* that date." (Emphasis added.) 735 ILCS 5/13-202.2(e) (West 2006).

The plaintiff was born on May 5, 1970. In this case, Father Roberts allegedly assaulted the plaintiff in the spring of 1984 in Belleville. However, it was not until his emergency room visit in December 1998, and his subsequent mental health treatment, that he realized that the actions of Father Roberts against him in 1984 caused him injury. The plaintiff filed suit against Father Roberts and the diocese defendants on November 12, 2003–several months past 19 years after the events in question. Given that time frame, the plaintiff's suit was filed within five years of discovery. The plaintiff argues that his filing was timely because the limitations period states that an individual has five years to file from the date of the discovery that the sexual abuse occurred and the discovery that the injury was caused by the childhood sexual abuse. 735 ILCS 5/13-202.2(b) (West 2006).

In order for this limitations period to be applicable, the plaintiff also argues that this amended statute was legislatively intended for retroactive application. He cites to the language of the statute itself, which provides that it applies to actions pending on the effective date of the amendment "*as well as actions commenced on or after that date*" (emphasis added)–July 24, 2003. 735 ILCS 5/13-202.2(e) (West 2006).

The defendants contend that the 2003 amendment to the child sexual abuse statute of limitations cannot serve to revive an expired claim and that the legislature never intended for a retroactive application of the statute for the purpose of reviving an expired claim.

6

Given the plaintiff's minority at the time of the alleged sexual assault, the normal personal injury statute of limitations would have begun to run after he turned 18 years of age on May 5, 1988, with suit having to be filed within the following two years. Ill. Rev. Stat. 1989, ch. 110, par. 13-202 (now see 735 ILCS 5/13-202 (West 2006)); Ill. Rev. Stat. 1989, ch. 110, par. 13-211 (now see 735 ILCS 5/13-211 (West 2006)). If somehow that had not been applicable, then even under the 1991 statute of repose the deadline for filing this type of lawsuit would have been on the plaintiff's thirtieth birthday–May 5, 2000. See Ill. Rev. Stat., 1990 Supp., ch. 110, par. 13-202.2 (now see 735 ILCS 5/13-202.2 (West 2006)). If either of these two limitation/repose periods applied to this case, it could serve to bar the plaintiff's suit.

If the current statute of limitations is retroactive, then the plaintiff's lawsuit should not have been dismissed. Therefore, we turn to the issue of retroactivity and explore the development of that legal area.

Over time, a discrepancy developed in Illinois courts about the handling of the issue of statutory retroactivity. The Illinois Supreme Court weighed in on the handling of the discrepancy. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 749 N.E.2d 964 (2001). Before the court's decision in *Commonwealth Edison Co.*, Illinois courts followed two distinct approaches to deciding the question. With the "vested rights approach," the law applied was that which was in effect at the time of the appeal unless the use of that law somehow interfered with a vested right. The term "vested right" was defined to be an interest receiving interference protection by way of the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, §2). *Commonwealth Edison Co.*, 196 Ill. 2d at 34, 749 N.E.2d at 969 (citing *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289, 664 N.E.2d 36, 39 (1996)). With the vested rights approach, the legislature's intent regarding retroactivity is not relevant. *Commonwealth Edison Co.*, 196 Ill. 2d at 34, 749

N.E.2d at 969 (relying on *Armstead*, 171 Ill. 2d at 289, 664 N.E.2d at 39). Under the "legislative intent approach," the presumption is against a retroactive application of the statutory changes unless the legislature clearly indicates an intent that the amendments be so applied. *Commonwealth Edison Co.*, 196 Ill. 2d at 34, 749 N.E.2d at 969 (relying on *Armstead*, 171 Ill. 2d at 288, 664 N.E.2d at 39 (relying on *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 309, 522 N.E.2d 1195, 1199 (1988))).

In addressing this conflict, the *Commonwealth Edison Co.* court formally adopted a test set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). *Commonwealth Edison Co.*, 196 Ill. 2d at 39, 749 N.E.2d at 972. Under the *Landgraf* approach, we must first determine if the legislature expressed its intent relative to retroactivity. If the legislature's intent is clear, we must give effect to that intent unless constitutional principles otherwise prohibit the application. *Commonwealth Edison Co.*, 196 Ill. 2d at 38, 749 N.E.2d at 971 (relying on *Landgraf*, 511 U.S. at 272-73, 128 L. Ed. 2d at 256-57, 114 S. Ct. at 1500-01).

An exercise in determining legislative intent must always begin with the language itself, which should be given its plain and ordinary meaning. When the statutory language is "clear and unambiguous," we do not need to resort to other tools of statutory interpretation. *Paris v. Feder*, 179 Ill. 2d 173, 177, 688 N.E.2d 137, 139 (1997).

If the legislature expressed no intent, then courts must determine "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505. As noted in the dissent in *Galloway*:

"The second step of this inquiry is essentially the same as the vested rights approach to retroactivity. The retroactivity cases that predate the supreme court's decision in *Commonwealth Edison Co.* are thus still relevant. However, the vested rights inquiry

8

is now a default rule that need only be considered in the absence of express legislative intent regarding retroactivity." *Galloway*, 367 Ill. App. 3d at 1002, 857 N.E.2d at 741 (Chapman, J., dissenting) (citing *Commonwealth Edison Co.*, 196 Ill. 2d at 38, 749 N.E.2d at 971 (relying on *Landgraf*, 511 U.S. at 273, 128 L. Ed. 2d at 257, 114 S. Ct. at 1501)).

The vested rights approach utilized before *Commonwealth Edison Co.* remains relevant to our consideration of whether the retroactive application of a statute implicates due process concerns. If a court determines that the retroactive application of a statutory amendment offends due process, the court must go further in its analysis and determine if the retroactive application *unreasonably* infringes on the rights implicated. To make a determination on the reasonableness of the due process infringement, the court must take fairness into consideration and balance the reasons advanced both for and against retroactive application. *Commonwealth Edison Co.*, 196 Ill. 2d at 47, 749 N.E.2d at 976 (relying on *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 241-42, 447 N.E.2d 408, 416 (1983) (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.)).

The balancing approach mandated by *Landgraf* and *Commonwealth Edison Co.* marks a significant shift away from the approach to due process concerns followed under the vested rights approach. Many courts utilizing the vested rights approach have concluded that a retroactive application violated due process because the defendant maintained a vested right in the affirmative defenses–statutes of limitations or repose. In reaching the conclusion that a retroactive application violated due process, those courts failed to utilize the balancing test mandated by *Landgraf* and *Commonwealth Edison Co.* See, *e.g.*, *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 404-05, 712 N.E.2d 298, 310 (1998); *M.E.H.*, 177 Ill. 2d at 214-15, 685 N.E.2d at 339; *D.P. v. M.J.O.*, 266 Ill. App. 3d 1029, 1036, 640 N.E.2d 1323, 1328 (1994). Concluding the analysis without using the balancing test is an approach

9

expressly rejected by the supreme court. *Commonwealth Edison Co.*, 196 Ill. 2d at 47, 749 N.E.2d at 976 (explaining that "[i]n assessing whether the application of a new statutory amendment to an existing controversy violates due process, the question is not simply whether the ' "rights" allegedly impaired are [labeled] "vested" or "non[]vested" ' " (quoting *In re Marriage of Semmler*, 107 Ill. 2d 130, 137, 481 N.E.2d 716, 720 (1985))). In shifting to the legislative intent approach, courts have become more deferential to legislative determinations that the benefits of a retroactive application of a statute outweigh these concerns. *Commonwealth Edison Co.*, 196 Ill. 2d at 37-38, 749 N.E.2d at 971 (relying on *Landgraf*, 511 U.S. at 272, 128 L. Ed. 2d 256-57, 114 S. Ct. at 1500-01). We conclude that we must reconsider the retroactivity of the 1993 amendment under the principles announced in *Commonwealth Edison Co.*

We must first determine if the legislature intended a retroactive application of its 2003 amendment. The 2003 amendment applies to cases filed on or after the date on which the amendment went into effect. 735 ILCS 5/13-202.2(e) (West 2006). The plaintiff filed this case shortly after the amendment went into effect. If we take the statutory language as written, then the amendment would apply to this case–unless prohibited because of a constitutional problem.

In *Wheaton v. Suwana*, 355 Ill. App. 3d 506, 823 N.E.2d 993 (2005), this court considered retroactivity language nearly identical to that at issue here. *Wheaton* involved an amendment to the statute of limitations for personal injury actions against public entities or officials. The amended statute provided that it applied " 'to an action or proceeding pending on or after this amendatory Act's effective date,' " unless either of two statutory exceptions were applicable. *Wheaton*, 535 Ill. App. 3d at 510, 823 N.E.2d at 996 (quoting 745 ILCS 10/8-101(d) (West Supp. 2003)). We found that, unless one of the statutory exceptions applied, this language indicated an intent that the changes be applied

10

retroactively. *Wheaton*, 355 Ill. App. 3d at 514, 823 N.E.2d at 999.

In *Wheaton*, however, the statute expressly provided that it did *not* apply to any actions otherwise included within the scope of this language if applying the new statute would take away a vested right, such as a statute of limitations defense. *Wheaton*, 355 Ill. App. 3d at 515, 823 N.E.2d at 1000. The statute at issue in the instant case contains no similar exception. On its face, the statute indicates a legislative intent that the amendment be applied retroactively.

The defendants, however, point to *dicta* in a First District decision interpreting similar language relating to the application of the 1990 amendment and reaching the opposite conclusion. We find their argument unpersuasive. In *D.P. v. M.J.O.*, 266 Ill. App. 3d 1029, 640 N.E.2d 1323 (1994), the First District Appellate Court found that a trial court erred in dismissing a complaint pursuant to the statute of limitations in effect prior to the 1990 amendment, because it did not consider the plaintiffs' allegation that they were unable to discover the abuse until years after it had occurred. *D.P.*, 266 Ill. App. 3d at 1032, 640 N.E.2d at 1325. The court went on to state that it agreed with the defendant's argument that "had this action been time[-]barred in 1990, the enactment of the amendatory act under section 13-202.2 would not have been effective to revive an otherwise time-barred action." *D.P.*, 266 Ill. App. 3d at 1036, 640 N.E.2d at 1328. In reaching this conclusion, the court seemed to acknowledge that, on its face, the statutory language providing that the amendment was applicable to " 'actions pending on the effective date of [the 1990 amendment] as well as to actions commenced on or after that date' " could be construed to include the case before it, which was filed after the effective date of the 1990 amendment. *D.P.*, 266 Ill. App. 3d at 1036, 640 N.E.2d at 1328 (quoting section 13-202.2(e) of the Code (735 ILCS 5/13-202.2(e) (West 1992)) and noting that, because the action was filed after the effective date, it was "arguably subject to inclusion within the scope" of this statutory

11

language).  The court, however, found that the "constitutional problems which such a construction would engender" mitigated in favor of a much narrower reading.  *D.P.*, 266 Ill. App. 3d at 1036, 640 N.E.2d at 1328.

We emphasize that *D.P.* was decided seven years before the supreme court decided *Commonwealth Edison Co.*  As previously noted, courts then followed the vested rights approach to retroactivity, under which legislative intent was " 'largely ignored' " (*Commonwealth Edison Co.*, 196 Ill. 2d at 34, 749 N.E.2d at 969 (quoting *Armstead*, 171 Ill. 2d at 289, 664 N.E.2d at 39)) and courts automatically found that retroactive changes to statutes of limitations and repose violated due process without balancing the considerations set forth by the *Commonwealth Edison Co.* court.  Assuming that the law regarding retroactivity before *Commonwealth Edison Co.* required the *D.P.* court to read into the statutory language an exception that was not expressly contained therein, we do not believe that the legislative intent approach to retroactivity requires us to do likewise.  We conclude that section 13-202.2(e) of the Code (735 ILCS 5/13-202.2(e) (West 2006)) evinces a clear legislative intent that the 2003 amendment apply to all cases filed on or after its effective date, including those in which the allegations of abuse relate to events that preceded the amendment.

We next consider whether the retroactive application of the amendments would violate due process.  We note that only one of the defendants, the Diocese of Belleville, raised a due process issue in the context of the statute of limitations as an affirmative defense.  None of the other defendants raised this issue before the trial court.  Thus, they have technically forfeited the consideration of their due process arguments on appeal.  However, forfeiture acts as a limitation on the parties, not the courts.  *People v. Murphy*, 322 Ill. App. 3d 271, 278, 752 N.E.2d 19, 25 (2001).  The considerations involved in a due process issue are closely intertwined with the considerations involved in determining the

12

intended temporal reach of a statutory change. Further, we believe that it is desirable to provide some clarification in the wake of *Commonwealth Edison Co.* Thus, we will address the argument that a retroactive application violates due process. See *Murphy*, 322 Ill. App. 3d at 278, 752 N.E.2d at 25.

As previously discussed, *Commonwealth Edison Co.* teaches that we must balance the reasons for and against a retroactive application and consider whether it is fair to apply the change retroactively. In assessing the fairness of a retroactive application, relevant considerations include (1) the legislature's motive in enacting the statutory change, (2) the period of retroactivity, and (3) whether the parties detrimentally relied on the prior version of the law. *Commonwealth Edison Co.*, 196 Ill. 2d at 44-45, 749 N.E.2d at 975.

In this case, the legislature specifically lengthened the applicable statute of limitations from 2 years to 10 years and added a discovery provision. That discovery provision was significantly explained as requiring not only the discovery that the abuse had occurred but also the discovery that a particular injury had emanated from that abuse. All three amendments the legislature made to the statute were motivated by an increasing awareness of the fact that the type of abuse alleged by the plaintiff is by its very nature subject to long-repressed memories. See *Pedigo v. Pedigo*, 292 Ill. App. 3d 831, 839, 686 N.E.2d 1180, 1185 (1997). Amendments to the statute that make it easier to file a claim even many years after the alleged abuse occurs evince a legislative intent to make the procedural limits on claims of this sort better suit the nature of the claim. That desire to fix the problems inherent in a previous version of a statute weighs in favor of a retroactive application. See *Commonwealth Edison Co.*, 196 Ill. 2d at 44, 749 N.E.2d at 975 (approving the legislative motive to correct previously existing law).

Given the standard personal injury statute of limitations applicable when the alleged abuse occurred, this plaintiff did not file suit until 13½ years after the limitations period had

13

expired. The period of retroactivity in this case is quite lengthy, a fact that weighs against a retroactive application. See *Commonwealth Edison Co.*, 196 Ill. 2d at 44-45, 749 N.E.2d at 975.

More significantly, we find that the defendants cannot claim to have detrimentally relied on the statute of limitations. The events at issue occurred 19 years before the statute of limitations was amended. The Diocese of Belleville generally argues that it will be prejudiced by having to defend the suit after so many years–based upon a "single 15-minute incident which occurred more than 22 years ago." The Diocese of Belleville contends that the task is made even more difficult because it was not the employing diocese for Father Roberts. No argument is made specifically regarding the manner in which the diocese "detrimentally relied" upon the passage of the limitations period. Father Roberts makes no argument relative to detrimental reliance.

In all litigation, the passage of time carries a potential for evidentiary problems. Memories fade. Records might be lost or destroyed. Witnesses might have moved away or died. While these issues with time affect both plaintiffs and defendants alike, we must determine whether the defense has relied on this limitations defense in some way. While there might be cases in which a defendant truly takes actions in reliance upon a limitations period, in this factual context we are unable to conceive of such reliance. The difficulties inherent in defending an action like the plaintiff's case do not stem from a retroactive application of the statute; rather, the difficulties flow from the legislature's judgment that placing this burden on defendants is an acceptable price to pay for tailoring procedural limitations to reflect the nature of the type of injury alleged.

In balancing fairness considerations and the reasons for and against the retroactive application of the statutory change, we conclude that the retroactive application does not unreasonably infringe on any due process right. See *Commonwealth Edison Co.*, 196 Ill.

14

2d at 47, 749 N.E.2d at 976 (relying on *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 241-42, 447 N.E.2d 408, 416 (1983) (Ryan, C.J., specially concurring, joined by Underwood and Moran, JJ.)).

We recognize that two recent cases reach a different result. *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997, 857 N.E.2d 737 (2006); *Kuch v. Catholic Bishop of Chicago*, 366 Ill. App. 3d 309, 851 N.E.2d 233 (2006). The court in *Kuch* failed to consider the impact of *Commonwealth Edison Co.* relative to the retroactive application of statutes. In *Galloway*, this court did briefly discuss *Commonwealth Edison Co.* before concluding that *M.E.H.* remained valid law. We respectfully disagree with the analysis in *Galloway*.

Because of our decision on the retroactivity of the 2003 limitations amendment, we do not address the plaintiff's alternate argument that this case is not a sexual abuse case, but a fraud case.

For the foregoing reasons, the judgment of the circuit court is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.


Reversed; cause remanded.


STEWART, P.J., concurs.


JUSTICE DONOVAN, dissenting:

I write this dissent because I believe, contrary to the majority opinion, that the reasoning in *Galloway* is correct. As we stated in *Galloway*: "*M.E.H.* is still good law, and we are compelled to abide by it. Accordingly, the repeal of the 12-year repose period governing claims of childhood sexual abuse cannot, consistent with due process, operate to

revive the plaintiff's claim." *Galloway*, 367 Ill. App. 3d at 1000, 857 N.E.2d at 740.

NO. 5-06-0383

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JOHN DOE A., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 03-L-713 |
| | ) | |
| DIOCESE OF DALLAS, DIOCESE | ) | |
| OF BELLEVILLE, ARCHDIOCESE | ) | |
| OF ST. LOUIS, and FATHER | ) | |
| KENNETH ROBERTS, | ) | Honorable |
| | ) | Lloyd A. Cueto, |
| Defendants-Appellees. | ) | Judge, presiding. |

**Opinion Filed**: March 7, 2008

**Justices**: Honorable Melissa A. Chapman, J.

Honorable Bruce D. Stewart, P.J.,
Concurs
Honorable James K. Donovan, J.,
Dissents

**Attorneys for Appellant**

Sarah D. Smith, D. Jeffrey Ezra, Ezra & Associates, LLC, 850 Vandalia, Suite 320, Collinsville, IL 62234; Jeffrey R. Anderson, Patrick W. Noaker, Michael G. Finnegan, Jeff Anderson & Associates, P.A., E-1000 First National Bank Building, 332 Minnesota Street, St. Paul, MN 55101

**Attorneys for Appellees**

Kevin T. Hoerner, Becker, Paulson, Hoerner & Thompson, P.C., 5111 West Main Street, Belleville, IL 62226 (for Father Kenneth Roberts); David Wells, Catherine A. Schroeder, Thompson & Coburn, One US Bank Plaza, St. Louis, MO 63101 (for the Diocese of Belleville); Edward S. Bott, Jr., Edward M. Goldenhersh, David P. Niemeier, Greensfelder, Hemker & Gale, P.C., 2000 Equitable Building, 10 South Broadway, St. Louis, MO 63102-1774 (for the Archdiocese of St. Louis)