No. 3-07-0735, cons.

Filed January 9, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| M.K., | ) | Appeal from the Circuit Court of the |
| | ) | Tenth Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois, |
| | ) | |
| v. | ) | No. 07-L-144 |
| | ) | No. 07-L-79 |
| L.C. and N.G., | ) | No. 07-L-75 |
| | ) | No. 07-L-34 |
| Defendants-Appellees | ) | No. 07-L-142 |
| | ) | No. 07-L-143 |
| Holy Family Catholic Church, | ) | No. 07-L-141 |
| formerly known as St. Mary's | ) | No. 07-L-32 |
| Catholic Church, and St. Patrick's | ) | No. 07-L-78 |
| Catholic Church and | ) | No. 07-L-77 |
| Daniel R. Jenky, Bishop of the Catholic | ) | |
| Diocese of Peoria, | ) | |
| a Religious Corporation, and | ) | |
| the Catholic Diocese of Peoria, | ) | The Honorable |
| a Religious Corporation, | ) | Joe R. Vespa |
| | ) | Kevin R. Galley |
| Defendants. | ) | Judges Presiding. |

JUSTICE McDADE delivered the opinion of the court:

In June 2007 the circuit court of Peoria County granted defendants' motions to dismiss plaintiffs' claims to recover damages for sexual abuse on the grounds plaintiffs' claims were time-barred. The trial court denied plaintiffs' motions to reconsider in October 2007. For the reasons that follow, we reverse.

BACKGROUND

In this consolidated appeal, plaintiffs all allege to have been the victims of separate and numerous acts of sexual abuse while in their minority by the individual defendants, all Catholic priests. Plaintiffs allege that at the times the abuse occurred, defendants, the Catholic Diocese of Peoria, and Bishop Daniel Jenky, individually, and the defendants' respective churches, employed or controlled the individual defendants as parish priests. Plaintiffs all filed their complaints after reaching majority and after reaching age 30. Defendants filed motions to dismiss on the grounds the statute of repose applicable to plaintiffs' causes of action expired prior to plaintiffs' filing of their complaints.

Defendants premised their motions to dismiss on the statute of repose contained in the 1991 Childhood Sexual Abuse Act (Act) (735 ILCS 5/13-202.2 (West 1992)). Plaintiffs responded subsequent amendments to the Act removed the statute of repose and should apply retroactively to their claims. Plaintiffs argued that the 1991 Act did not create a vested right in defendants to the expiration of the statute of repose, and, therefore, plaintiffs' causes of action are not barred. Plaintiffs also responded that if the statute of repose did apply, their complaints are not barred under the doctrine of equitable tolling.

In June 2007 the circuit court of Peoria County granted defendants' motions to dismiss. The trial court denied plaintiffs' motions to reconsider in October 2007. This appeal followed. "We review the trial court's ruling on the section 2-619 [(735 ILCS 5/2-615 (West 2006))] motion to dismiss based on the statute of repose *de novo*." *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 95, 839 N.E.2d 553, 555 (2005).

ANALYSIS

Plaintiffs argue that the circuit court of Peoria County erred in finding that defendants possess a vested right to the protection of the statute of repose. Under the version of the Act in effect 12 years after plaintiffs reached majority, the trial court concluded, plaintiffs' causes of action terminated but none had filed suit. Defendants argued they obtained a vested right to the expiration of plaintiffs' causes of action. At that time the statute read, in pertinent part as follows:

"(b) [I]n no event may an action for personal injury based on childhood sexual abuse be commenced more than 12 years after the date on which the person abused attains the age of 18 years."

735 ILCS 5/13-202.2 (West 1992).

Plaintiffs filed suit in April 2006, more than 12 years after reaching majority, and after reaching age 30. Before April 2006, the Illinois legislature amended section 13-202.2 of the CASS to remove the statute of repose and to clarify the application of the discovery rule in cases of childhood sexual abuse. Following the first amendment to the Act, the statute read, in pertinent part, as follows:

"(b) An action for damages for personal injury based on childhood sexual abuse must be commenced within 2 years of the date the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse.

\* \* \*

(e) This Section applies to actions pending on the effective

-3-

date of this amendatory Act of 1990 as well as to actions commenced on or after that date. The changes made by this amendatory Act of 1993 shall apply only to actions commenced on or after the effective date of this amendatory Act of 1993." 735 ILCS 5/13-202.2 (West 1994) (hereinafter 1993 Act).

Plaintiffs argue that the trial court should have applied the version of the Act in effect when they actually filed their complaints against defendants. Plaintiffs argue this includes proceeding without a period of repose. When plaintiffs filed, the statute read, in pertinent part, as follows:

"(b) Notwithstanding any other provision of law, an action for damages for personal injury based on childhood sexual abuse must be commenced within 10 years of the date the limitation period begins to run under subsection (d) or within 5 years of the date the person abused discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse. The fact that the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred is not, by itself, sufficient to start the discovery period under this subsection (b). Knowledge of the abuse does not constitute discovery of the injury or the causal relationship between any later-discovered injury and the abuse.

(e) This Section applies to actions pending on the effective date of this amendatory Act of 1990 as well as to actions commenced on or after that date. The changes made by this amendatory Act of 1993 shall apply only to actions commenced on or after the effective date of this amendatory Act of 1993. The changes made by this amendatory Act of the 93rd General Assembly apply to actions pending on the effective date of this amendatory Act of the 93rd General Assembly as well as actions commenced on or after that date." 735 ILCS 5/13-202.2(b) (West 2006).

Plaintiffs argue that under the current version of the statute the *limitations* period had not run because none of the plaintiffs had discovered, or through the use of reasonable diligence should have discovered, that the acts of childhood sexual abuse occurred or that the abuse caused their injuries. Plaintiffs also argue that the statute of repose does not apply to their causes of action, despite the fact that the statute of repose was in effect twelve years after they reached majority, because the legislature intended the 2003 amendments to the Act to apply retroactively to all claims of childhood sexual abuse.

1. Were Plaintiffs' Causes of Action Terminated Under the 1991 Statute of Repose Following the 1994 Amendment Eliminating the Statute of Repose.

A threshold matter is whether the 2003 amendments to the Act apply retroactively to plaintiffs' claims. In *Clay v. Kuhl*, 189 Ill. 2d 603, 609, 727 N.E.2d 217, 221 (2000), our

supreme court explicitly held that, in that case:

> "The plaintiff correctly concede[d] that if her action was already barred under the common law discovery rule prior to the enactment of section 13-202.2, then the new statute could not have revived it; under Illinois law, the barring of an action by a statute of limitations creates a vested right in favor of the defendant, and the action cannot later be revived. [Citations.]" *Clay*, 189 Ill. 2d at 609, 727 N.E.2d at 221.

However, *Clay* is not dispositive of the instant appeal because the court stated explicitly that it had "no occasion here to consider the operation or application of section 13-202.2." *Clay*, 189 Ill. 2d at 609, 727 N.E.2d at 221. Any reliance defendants place on *Clay* is misplaced.

Plaintiffs cite the Fifth District's recent decision in *Doe A. v. Diocese of Dallas*, 379 Ill. App. 3d 782, 885 N.E.2d 376 (2008), in support of their claim that a cause of action survives where the legislature repeals a statute of repose that would have terminated the cause of action. Plaintiffs argue the repeal revives the cause of action if the language in the amended statute evinces a legislative intent for retroactive application of the amended statute and if retroactive application of the amended statute is not prohibited by the constitution. *Diocese of Dallas*, 379 Ill. App. 3d at 789, 885 N.E.2d at 382.

The *Dallas* court did not directly address the issue of retroactivity as it applies to statutes of repose. The specific question in *Dallas* was whether, "[i]f the current *statute of limitations* is retroactive, *** the plaintiff's lawsuit should *** have been dismissed." (Emphasis added.) *Diocese of Dallas*, 379 Ill. App. 3d at 788, 885 N.E.2d at 381. The *Dallas* court's holding is

limited to a determination of the "retroactivity of the 2003 *limitations* amendment." (Emphasis added.) *Diocese of Dallas*, 379 Ill. App. 3d at 794, 885 N.E.2d at 386. Nonetheless, the *Dallas* court's opinion is instructive. We find that the same analysis it applied to determine that the change in the statute of limitations applied retroactively applies in this case. Applying that analysis, we find that the legislature intended its repeal of the statute of repose to apply retroactively.

The *Dallas* court recognized that if either the 1991 limitations period or the 1991 period of repose applied to the plaintiff's case, then either "could serve to bar the plaintiff's suit." *Diocese of Dallas*, 379 Ill. App. 3d at 788, 885 N.E.2d at 381. The court rejected the defendants' argument that "the 2003 amendment to the child sexual abuse statute of limitations cannot serve to revive an expired claim and that the legislature never intended for a retroactive application of the statute for the purpose of reviving an expired claim." *Diocese of Dallas*, 379 Ill. App. 3d at 788, 885 N.E.2d at 381. The court ultimately found that the legislature intended the amendment to the statute of limitations to apply retroactively and that "retroactive application does not unreasonably infringe on any due process right." *Diocese of Dallas*, 379 Ill. App. 3d at 794, 885 N.E.2d at 385.

The *Dallas* court recognized that *dicta* in a "First District decision interpreting similar language relating to the application of the 1990 amendment" *repealing the statute of repose* and changing the limitations period reached the opposite conclusion. *Diocese of Dallas*, 379 Ill. App. 3d at 791, 885 N.E.2d at 383. However, the Fifth District found that the defendants' reliance on the First District's rationale was unpersuasive, because the First District reached that conclusion "seven years before the supreme court decided *Commonwealth Edison Co. [v. Will County*

*Collector*, 196 Ill. 2d 27, 749 N.E.2d 964 (2001)]." Before *Commonwealth Edison Co.* courts followed the vested rights approach to retroactivity, under which legislative intent was largely ignored. *Diocese of Dallas*, 379 Ill. App. 3d at 792, 885 N.E.2d at 384, quoting *Commonwealth Edison Co.*, 196 Ill. 2d at 34, 749 N.E.2d at 969.

Despite stating that it recognizes that "the Illinois Supreme Court *** rejected the vested rights approach to retroactivity and adopted the legislative intent approach," the dissent nonetheless finds that the supreme court's decision in *M.E.H. v. L.H.*, 177 Ill. 2d 207, 685 N.E.2d 335 (1997), is controlling. Slip op. at ___. In *M.E.H.*, our supreme court found that the defendant in that case had a vested right to invoke the limitations period as a defense and that the defendant's *vested right* could not be taken away without offending the due process protections of the state's constitution. *M.E.H.* 177 Ill. 2d at 214-15, 685 N.E.2d at 339. We reject the dissent's implication that under the supreme court's decision in *M.E.H.* "taking away the right to invoke the statute of repose as a defense to a cause of action is" in and of itself, "constitutionally prohibited." Slip op. at ___. We find that the *M.E.H.* court reached its conclusion based on the existence of a vested right. The court reached its decision only after first concluding that "once a statute of limitations has expired, the defendant has a *vested right* to invoke the bar of the limitations period as a defense to a cause of action. That right cannot be taken away by the legislature without offending the due process protections of our state's constitution." *M.E.H.*, 177 Ill. 2d at 214-15, 685 N.E.2d at 339-40.

In *Commonwealth Edison Co.*, the supreme court formally adopted "the *Landgraf* approach" to assess the retroactivity of a legislative amendment. Now, under *Landgraf v. USI Film Products,* 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), courts "first determine

if the legislature expressed its intent relative to retroactivity. If the legislature's intent is clear, we must give effect to that intent unless constitutional principles otherwise prohibit the application." *Diocese of Dallas*, 379 Ill. App. 3d at 789, 885 N.E.2d at 382, citing *Commonwealth Edison Co.*, 196 Ill. 2d at 38, 749 N.E.2d at 971. The *M.E.H.* court did not find a general constitutional prohibition against the legislature's judgment to eliminate a statute of repose. The sole basis for the supreme court's holding in *M.E.H.* was the existence of what was then a vested right. Our supreme court has flatly rejected the "vested rights" approach and clearly established an alternate mode of inquiry for determining the retroactive impact of a legislative change that this court must employ on a case-by-case basis. Given the supreme court's rejection of the vested rights approach we must find that *M.E.H.* no longer controls the instant appeal.

The *Commonwealth Edison Co.* court further explained the *Landgraf* approach as follows:

> "A court must consider the nature of a *** measure and the circumstances leading to its adoption before the court may determine "that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation."' [Citation].
>
> In determining whether a retroactive *** measure is "'so harsh and oppressive as to transgress the constitutional limitation'" [citation], courts have considered such factors as the legislative purpose in enacting the amendment [citations], the length of the period of retroactivity [citations], whether [an individual] reasonably and detrimentally relied on the prior law [citations], and whether the [individual] had adequate notice of the change

-9-

in the law [citation].

Parenthetically, we note that the United States Supreme Court has strictly limited the scope of inquiry under the due process clause of the federal constitution, holding that neither lack of notice nor detrimental reliance are 'dispositive' factors in determining whether the retroactive application of a[n] *** amendment violates the due process clause of the federal constitution. [Citation]."

*Commonwealth Edison Co.*, 196 Ill. 2d at 43, 749 N.E.2d at 974.

The *Dallas* court found that under the old approach (the vested rights approach), "courts automatically found that retroactive changes to statutes of limitations and repose violated due process without balancing the considerations set forth by the *Commonwealth Edison Co.* court." *Diocese of Dallas*, 379 Ill. App. 3d at 792, 885 N.E.2d at 382. See also *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997, 1002, 857 N.E.2d 737, 741-42 (2006) (Chapman, J., dissenting) ("The balancing required by *Landgraf* and *Commonwealth Edison Co.* marks a significant shift from the approach to due process concerns under the vested rights analysis. *** Those courts found that retroactive application would run afoul of due process because defendants have a vested right in the affirmative defense afforded them by statutes of limitations or repose, but they did not perform the careful balancing mandated under *Landgraf* and *Commonwealth Edison Co.* in arriving at this result").

Although the supreme court has never directly held that the *Landgraf* approach applies to determining whether a repeal of a statute of repose applies retroactively and *Commonwealth Edison Co.* did not specifically apply the *Landgraf* analysis to a statute of repose, the *Landgraf*

-10-

approach requires courts, faced with *any* legislative amendment, to "balance the reasons for and against a retroactive application and consider whether it is fair to apply the change retroactively." *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 384, citing *Commonwealth Edison Co.*, 196 Ill. 2d at 44-45, 749 N.E.2d at 975. The *Landgraf* approach's guarantee of fairness strongly supports its application to determining the retroactive applicability of a repeal of a statute of repose as well as to determinations of whether changes to statutes of limitations apply retroactively. The same questions inherent in determining whether a statute of limitations may apply retroactively, *e.g.*, whether the legislature evinced a desire to fix problems inherent in a previous version of the statute, apply to determining whether a change in a statute of repose apply retroactively. Under *Landgraf*, the court asks whether the legislature changed (in this case repealed) the statute of repose "to fix the problems inherent in [the] previous" statute of repose. *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 385, citing *Commonwealth Edison Co.,* 196 Ill. 2d at 44, 749 N.E.2d at 975 (approving the legislative motive to correct previously existing law). Moreover, the supreme court did not limit the *Landgraf* approach to the specific legislative amendment before it but stated it as a general rule for determining retroactivity.

Applying the *Landgraf* approach to the amendments to the Act, the *Dallas* court noted that "[a]ll three amendments the legislature made to the statute were motivated by an increasing awareness of the fact that the type of abuse alleged by the plaintiff is by its very nature subject to long-repressed memories." *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 385. The court found that "[a]mendments to the statute that make it easier to file a claim even many years after the alleged abuse occurs evince a legislative intent to make the procedural limits on claims of this sort better suit the nature of the claim. That desire to fix the problems inherent in a previous

version of a statute weighs in favor of a retroactive application." *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 385.

Although a statute of repose differs from a statute of limitations and creates a substantive right unlike the purely procedural statute of limitations (*Freeman v. Williamson*, 383 Ill. App. 3d 933, 939, 890 N.E.2d 1127, 1133 (2008)), the legislature has determined that both statutes of limitations and statutes of repose are procedural tools. The supreme court, in adopting the *Landgraf* approach in *Commonwealth Edison Co.* has also made clear that the fact that the statute of repose creates a substantive right is no longer determinative. If the court were to decline to apply a legislative amendment retroactively, it would detrimentally impact the plaintiff's substantive right to a remedy. If the court does determine that retroactive application is appropriate, it may affect the defendant's substantive right to the protections of a repose period. Under *Landgraf*, the issue in determining retroactivity is how the substantive rights of the respective parties--either the defendant's right to procedural protections or the plaintiff's right to redress from the alleged wrongs--will be affected.

Thus, the question is not whether defendants' substantive right exists or is impacted. The questions is whether the legislature's act in changing those rights offends due process. The United States Supreme Court has recognized, and our supreme court has agreed, that "Legislation has come to supply the dominant means of legal ordering, and circumspection has given way to greater deference to legislative judgments." *Commonwealth Edison Co.*, 196 Ill. 2d at 37-38, 749 N.E.2d at 971, quoting *Landgraf*, 511 U.S. at 272-73, 128 L. Ed. 2d at 256-57, 114 S. Ct. at 1500-01. Despite this recognition, even where the legislature has stated its intent that the change in the law apply retroactively, the court is nonetheless bound to determine if there is any

-12-

constitutional prohibition to following the legislature's wishes. See *Commonwealth Edison Co.*, 196 Ill. 2d at 38, 749 N.E.2d at 971 ("Under the *Landgraf* test, if the legislature has clearly indicated what the temporal reach of an amended statute should be, *then, absent a constitutional prohibition*, that expression of legislative intent must be given effect" (emphasis added)).

Notably, in this case, the legislature chose to take away childhood sexual abuse defendants' substantive right to the protection of the statute of repose at the same time it provided additional substantive rights for the alleged victims of childhood sexual abuse. In finding that a retroactive application of the change in the statute of limitations did not present a constitutional problem, the *Dallas* court noted as follows:

> "In all litigation, the passage of time carries a potential for evidentiary problems. Memories fade. Records might be lost or destroyed. Witnesses might have moved away or died. While these issues with time affect both plaintiffs and defendants alike, we must determine whether the defense has relied on this limitations defense in some way. While there might be cases in which a defendant truly takes actions in reliance upon a limitations period, in this factual context we are unable to conceive of such reliance. The difficulties inherent in defending an action like the plaintiff's case do not stem from a retroactive application of the statute; rather, the difficulties flow from the legislature's judgment that placing this burden on defendants is an acceptable price to pay for tailoring procedural limitations to reflect the nature of the type of injury alleged."

*Diocese of Dallas*, 379 Ill. App. 3d at 793-94, 885 N.E.2d at 385.

The same considerations apply to determining whether applying the repeal of the statute of repose retroactively to plaintiffs' claims presents a constitutional problem. We must consider whether the defense has relied on the period of repose and whether any potential difficulties in defending plaintiffs' complaints "stem from a retroactive application of the statute" repealing the period of repose. *Diocese of Dallas*, 379 Ill. App. 3d at 794, 885 N.E.2d at 385. In making that determination, we are required to assess whether placing the burden on defendants to defend plaintiffs' causes of action "is an acceptable price to pay for tailoring procedural limitations to reflect the nature of the type of injury alleged." *Diocese of Dallas*, 379 Ill. App. 3d at 794, 885 N.E.2d at 385.

As to the impact of retroactive application of the repeal of the statute of repose on the defendants in this case, Goodman claims that "[a] proper reading of the *Commonwealth Edison Co.* case demonstrates that some asserted rights *** do not constitute vested rights which present a 'constitutional prohibition' to the retroactive application of a statute" while in contrast "certain rights, such as the defense resulting from the barring of a claim, operate to preclude the retroactive application of a statute that wold resurrect such claims." This is a mischaracterization of the basis of the supreme court's decision in *Commonwealth Edison Co.* and a misstatement of the law announced in *Landgraf*.

The *Commonwealth Edison Co.* court relied heavily on the school district's settled expectations in distinguishing retroactive application of the amended statute in that case from retroactive application of the amended statute in *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 712 N.E.2d 298 (1998). It did not hold that interference with what the court previously

-14-

would have found to be a "vested right" is constitutionally prohibited. Our supreme court only held that a defendant's "settled expectations" should be *considered* in deciding whether to apply a legislative amendment retroactively. *Commonwealth Edison Co.*, 196 Ill. 2d at 39, 749 N.E.2d at 971-72, quoting *Landgraf*, 511 U.S. at 269-70, 128 L. Ed. 2d at 254-55, 114 S. Ct. at 1499 ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment [citation] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. *** However, retroactivity is a matter on which judges tend to have 'sound...instinct[s],' [citation] and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance").

The court has made clear that "[i]n assessing the fairness of a retroactive application, relevant considerations include *** the legislature's motive in enacting the statutory change *** and *** whether the parties detrimentally relied on the prior version of the law." *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 384-85, citing *Commonwealth Edison Co.*, 196 Ill. 2d at 44-45, 749 N.E.2d at 975. Applying that analysis in this case, we find that the legislature's repeal of the statute of repose "weighs in favor of a retroactive application" of the legislature's repeal of the statute of repose. See *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 385, citing *Commonwealth Edison Co.*, 196 Ill. 2d at 44, 749 N.E.2d at 975.

As to the legislature's motive in enacting the statutory change, the court has already held

that a problem inherent in the old version of the statute (including the statute of repose) was that it did not suit the nature of claim. In this case the nature of the claim is one which "by its very nature [is] subject to long-repressed memories." *Diocese of Dallas*, 379 Ill. App. 3d at 793, 885 N.E.2d at 385, citing *Pedigo v. Pedigo,* 292 Ill. App. 3d 831, 839, 686 N.E.2d at 1185 (1997). Any statute of repose applicable to incidents of childhood sexual abuse inherently fails to recognize that the nature of the claim is subject to long-repressed memories. Applying the repeal of the statute of repose retroactively to allow plaintiffs to bring suit long after the alleged abuse occurred would correct that problem and bring the current application of the law into line with the nature of the claim.

Turning to whether any of the parties have detrimentally relied on the prior version of the law, none of the defendants have pointed to any detrimental reliance they have placed on the termination of plaintiffs' causes of action. Even assuming the defendants are relying on the difficulty in defending against plaintiffs' claims concerning incidents that occurred long ago, that fact is insufficient to tip the scales against retroactive application of the elimination of the repose period. The *Dallas* court's reasoning is instructive. That court wrote as follows:

> "In all litigation, the passage of time carries a potential for
> evidentiary problems. Memories fade. Records might be lost or
> destroyed. Witnesses might have moved away or died. While these
> issues with time affect both plaintiffs and defendants alike, we must
> determine whether the defense has relied on this limitations defense
> in some way. While there might be cases in which a defendant truly
> takes actions in reliance upon a limitations period, in this factual

-16-

context we are unable to conceive of such reliance. The difficulties inherent in defending an action like the plaintiff's case do not stem from a retroactive application of the statute; rather, the difficulties flow from the legislature's judgment that placing this burden on defendants is an acceptable price to pay for tailoring procedural limitations to reflect the nature of the type of injury alleged."

*Diocese of Dallas*, 379 Ill. App. 3d at 793-94, 885 N.E.2d at 385.

Both defendants and plaintiffs face similar evidentiary difficulties in this litigation. Defendants have pointed to no actual actions they took in reliance on the repose period. No records were destroyed. No witnesses died. The legislature has determined that it previously failed to recognize that allegations of this type are subject to repressed memories and may require significant time before a plaintiff brings a cause of action. The legislature determined that placing the burden on defendants to defend old claims of this type is generally an acceptable price to pay to allow victims of sexual abuse to seek redress. Defendants point to no unique facts in this case that would make their burden any higher than the burden the legislature chose to place on defendants in this type of case. Therefore none of defendants' difficulties in defending this case, had they actually alleged any, would actually result from retroactive application of the statute of repose. Rather, any such difficulties flow naturally from defending claims of this type.

We hold that retroactive application of the legislature's repeal of the statute of repose is consistent with the legislature's motive in enacting the statutory change and that the defendants have not relied on the statute of repose to their detriment. The legislature's repeal of the statute of repose applies to plaintiffs' claims. Accordingly, plaintiffs' complaints are not barred by the

-17-

statute of repose.

2. Are Plaintiffs' Causes of Action Barred by the Statute of Limitations.

Plaintiffs argue the applicable statute of limitations is that stated in the 2003 statute. Plaintiffs argue that because, when they filed suit, they had not discovered the "causal relationship between any later-discovered injury and the abuse," the discovery rule tolled the statute of limitations. Defendants argue that the statute of limitations in the pre-1993 statute is the applicable statute of limitations, that under that version of the Act the statute of limitations expired when plaintiffs reached majority, and, therefore, that plaintiffs failed to timely file their complaint.

> "When a change in law affects only the remedy or the law of procedure, a right of action will be enforced under the new procedure without regard to whether it accrued before or after the change in the law, and without regard to whether or not suit had been instituted." *Becharas v. Cummings*, 292 Ill. App. 3d 1105, 1107-1108, 687 N.E.2d 95, 97, citing *In re Pronger,* 118 Ill. 2d 512, 522, 517 N.E.2d 1076 (1987), citing *Ogdon v. Gianakos,* 415 Ill. 591, 597, 114 N.E.2d 686 (1953).

We find that the 2003 amendments to the Act apply to plaintiffs' claims. The legislature evinced an intent that its amendment to the Act apply retroactively. Under *Landgraf*, the only question remaining for the court is whether retroactive application of the amendment would offend due process. As previously discussed, the retroactive application of the legislature's repeal of the statute of repose does not offend due process. It would be illogical, therefore, for us to

hold that retroactive application of the statute of limitations offends due process. Finally, retroactive application of the legislature's amendment to the statute of limitations does not in itself offend due process for the same reasons retroactive application of the repeal of the statute of repose does not offend due process. For all of the foregoing reasons, the statute of limitations in the 2003 Act applies to plaintiffs' complaints.

The 2003 Act reads, in pertinent part, as follows:

"(b) Notwithstanding any other provision of law, an action for damages for personal injury based on childhood sexual abuse must be commenced within 10 years of the date the limitation period begins to run under subsection (d) or within 5 years of the date the person abused discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse. The fact that the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred is not, by itself, sufficient to start the discovery period under this subsection (b). Knowledge of the abuse does not constitute discovery of the injury or the causal relationship between any later-discovered injury and the abuse.

***

(d) The limitation periods under subsection (b) do not begin to run before the person abused attains the age of 18 years ***."

-19-

735 ILCS 5/13-202.2(b), (d) (West 2006).

Plaintiffs filed their complaints in April 2006. They argue that their complaints allege sufficient facts to raise material questions of fact as to when they discovered that the acts defendants allegedly committed constituted an "act of childhood sexual abuse" and that their injuries were "caused by the childhood sexual abuse." 735 ILCS 5/13-202.2(b) (West 2006).

"Normally, the question of when a party knew or should have known both of an injury and its probable wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them. [Citation.] Thus, the court may make such a determination upon a motion to dismiss or a motion for summary judgment so long as such conclusion is the only one to be drawn from plaintiff's pleading. [Citation.] Strict scrutiny is applied to determine whether the state of the victim's awareness was such that could reasonably have put him on notice of the nexus between the abuse and the injuries. [Citation.]" *Benton v. Vonnahmen*, 288 Ill. App. 3d 199, 206, 679 N.E.2d 1270, 1275 (1997).

Defendant Goodman argues that plaintiffs failed to allege sufficient facts to toll the statute of limitations using the discovery rule because (a) plaintiffs failed to allege exactly when they discovered their cause of action under the discovery rule and because (b) the allegations in plaintiffs' complaints demonstrate that they were aware of the alleged misconduct when it occurred and that the alleged misconduct resulted in harm.

-20-

It is insufficient that plaintiffs knew or even suspected that defendants alleged misconduct was wrongful and that defendants' wrongful conduct harmed them. The legislature has clearly provided:

"The fact that the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred is not, by itself, sufficient to start the discovery period under this subsection (b). Knowledge of the abuse does not constitute discovery of the injury or the causal relationship between any later-discovered injury and the abuse."

735 ILCS 5/13-202.2(b) (West 2006).

Goodman's argument fails to address that plaintiffs alleged that they did not discover the causal relationship between the acts (regardless of whether they were wrongful and who was to blame) and their injuries.

Finally, Goodman cites no authority for his proposition that plaintiffs must allege exactly when they discovered their causes of action. He cites *D.P. v. M.J.O.*, 266 Ill. App. 3d 1029, 1034-35, 640 N.E.2d 1323, 1327 (1994), where the court wrote as follows:

"In the instant case however, the pleadings regarding the plaintiffs' belated discovery of the connection between their abuse and their symptoms is sparse and conclusory. Unlike the pleadings in *Franke v. Geyer,* the pleadings in this case do not provide any basis upon which to evaluate whether the state of the plaintiffs' awareness was sufficient to have put them on notice of that

-21-

connection at any earlier time. Accordingly, the trial court was premature in dismissing counts I and IV pursuant to defendant's fact motion brought under section 2-619(a)(5) of the Code of Civil Procedure. No extrinsic facts outside of the pleadings were offered by the movant from which any evaluation could have been made as to whether the state of the plaintiffs' awareness was sufficient to put them on notice of the connection between the abuse and the injury."

*D.P.*, 266 Ill. App. 3d at 1034-35, 640 N.E.2d at 1327.

Goodman argues that plaintiffs' factual allegations are not sufficient to invoke the discovery rule because they do not allege an exact date plaintiffs discovered their causes of action. Nothing in the *D.P.* court's language provides that a plaintiff must allege an exact date of "discovery" to invoke the discovery rule. Goodman does not attack the *quality* of plaintiffs' factual allegations. The *D.P.* court based its decision on the quality of the plaintiff's allegations in that case, finding them to be "sparse and conclusory." *D.P.*, 266 Ill. App. 3d at 1034-35, 640 N.E.2d at 1327. Goodman only attacks the *sufficiency* of plaintiffs' factual allegations. We find that under the plain language of the Act plaintiff' allegations are sufficient to invoke the discovery rule as defined in the Act.

CONCLUSION

Plaintiffs' complaints are not barred by the statute of repose found in the Act when plaintiffs reached majority. Plaintiffs' causes of action are not barred by the statute of limitations because plaintiffs have pled adequate facts to invoke the discovery rule and filed their complaints within the period of limitations following discovering both "(i) that the act of childhood sexual

-22-

abuse occurred and (ii) that the injury was caused by the childhood sexual abuse." Because plaintiffs' complaints were timely filed, we need not reach plaintiffs' arguments that equitable principles also serve to toll the statute of limitations or that plaintiffs' allegations of repressed memories tolled the statute of limitations. The circuit court of Peoria County's order granting summary judgment in defendants' favor is reversed and the cause remanded for further proceedings.

Reversed and remanded.

O'BRIEN, P.J., concurs.

CARTER, J., dissenting:

I respectfully dissent because I believe the plaintiffs' claims were barred by the 1991 statute of repose, which barred anyone over the age of 30 from bringing an action for damages based upon childhood sexual abuse. Each of the plaintiffs here reached the age of 30 before the statute of repose was repealed in 1994. While the majority relies upon one Fifth District case, Doe v. Diocese of Dallas, 379 Ill. App. 3d 782, 885 N.E.2d 376 (2008), I agree with the analysis set forth in a case decided by another Fifth District panel, Galloway v. Diocese of Springfield in Illinois, 367 Ill. App. 3d 997, 857 N.E.2d 737 (2006).

In Galloway, the court recognized that the Illinois Supreme Court in Commonwealth Edison v. Will County Collector, 196 Ill. 2d 21, 749 N.E.2d 964 (2001), rejected the vested rights approach to retroactivity and adopted the legislative intent approach of the United States Supreme Court set forth in Landgraf v. USI Film Products, 511 U.S. 244, 128 L. E. 2d 229, 114 S. Ct. 1483(1994).

Galloway, 367 Ill. App. 3d at 999-1000, 857 N.E.2d at 739-40.

Under this test, "if the legislature has clearly indicated what

the temporal reach of an amended statute should be, then, absent

a constitutional prohibition, that expression of legislative

intent must be given effect." Commonwealth Edison, 196 Ill. 2d

at 38, 749 N.E.2d at 971 (2001). The supreme court recognized in

Commonwealth Edison, however, that cases decided under the vested

rights approach to retroactivity remain relevant insofar as they

define interests protected from legislative interference by the

due process clause. Commonwealth Edison, 196 Ill. 2d at 47, 749

N.E.2d at 976.

Prior to its decision in Commonwealth Edison, the supreme

court decided the question at issue in the instant case, namely,

whether the 1991 statute of repose applied to the plaintiffs'

action where the time limit was not in effect when the abuse

occurred and was repealed before the action was filed. M.E.H. v.

L.H., 177 Ill. 2d 207, 685 N.E.2d 335 (1997). The supreme court

found that the defendant in that case had a vested right to

invoke the limitations period as a defense, and that this right

could not be taken away without offending the due process

protections of the state's constitution. M.E.H., 177 Ill. 2d at

214-15, 685 N.E.2d at 339. I agree with the Galloway court that

M.E.H. remains good law. Galloway, 367 Ill. App. 3d at 1000, 857

N.E.2d at 740. While Commonwealth Edison "switches the focus of

the first step of the retroactivity analysis from 'vested rights'

to legislative intent, it did not overrule the ruling in M.E.H.

-24-

that taking away the right to invoke the statute of repose as a defense to a cause of action is constitutionally prohibited." Galloway, 367 Ill. App. 3d at 1000, 857 N.E.2d at 739. Thus, I would find that the plaintiffs' claims were barred by the statute of repose, and cannot be revived.

In addition, I would find that the plaintiffs did not bring suit within a reasonable time period after the period of repose went into effect, and that the statute of repose was not tolled by the plaintiffs' claims that their memories of abuse were suppressed. M.E.H., 177 Ill. 2d at 217, 685 N.E.2d at 340. Finally, I would find that the plaintiffs failed to prove that the period of repose should be tolled due to fraudulent concealment of the abuse by the defendants. See Clay v. Kuhl, 189 Ill. 2d 603, 613, 727 N.E.2d 217, 223 (2000). Therefore, I would affirm the trial court's decision granting the defendants' motions to dismiss, and must dissent.